IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONNIE GEORGE MORTON,            )
                                 )
        Petitioner,          )
                                 )
v.                               )    1:15-CV-319
                                 )
FRANK L. PERRY,                  )
                                 )
        Respondent.          )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Petitioner Donnie Morton contends his convictions for robbery with a dangerous weapon and possession of a firearm by a felon were obtained in violation of his constitutional rights. He raises six challenges to his state court convictions, (Doc. 1), none of which establish grounds for relief. This Court will deny his habeas petition.

## FACTS

In August 2012, Mr. Morton was convicted by a jury in Cabarrus County Superior Court of robbery with a dangerous weapon and possession of a firearm by a felon. (Doc. 1 at 1; Doc. 10-2 at 55-56.) He also pleaded guilty to having habitual felon status, (Doc. 1 at 1; Doc. 10-2 at 64-67), and was sentenced to 116 to 149 months in the custody of the N.C. Department of Corrections. (Doc. 10-2 at 70-71.) On appeal, the North Carolina Court of Appeals found no error, *State v. Morton*, No. COA13-146, 2013 WL 6236922 (N.C. Ct. App. Dec. 3, 2013) (unpublished disposition); (Doc. 1 at 19-29), and the North Carolina Supreme Court denied review. 367 N.C. 494, 757 S.E.2d 901 (2014); (Doc. 1 at

30.) After state courts denied two Motions for Appropriate Relief ("MAR"), (Doc. 1 at 31-32, 34), Mr. Morton filed this petition pursuant to 28 U.S.C. § 2254. (Doc. 1 at 1.) Mr. Morton raises six grounds for relief. (*Id.* at 12-18.)

## BACKGROUND

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). "Federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations and quotations omitted).

When a state court has adjudicated a petitioner's claim on the merits, federal habeas courts may not grant relief unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011).

## PETITIONER'S CLAIMS

1. **Actual Innocence**

While the Supreme Court has not definitively rejected stand-alone habeas claims

based on actual innocence, it seems unlikely such a claim exists.[1] Even if actual innocence does constitute an independent basis for habeas relief, the Supreme Court "has made clear that the threshold for any hypothetical freestanding innocence claim is extraordinarily high." *Teleguz v. Pearson*, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (alteration and quotation marks omitted) (quoting *House v. Bell*, 547 U.S. 518, 555 (2006)). Assuming *arguendo* that a freestanding actual-innocence claim is cognizable and it is not procedurally blocked in this case,[2] Mr. Morton has not met this burden.

Mr. Morton maintains that his conviction for robbery with a firearm is a fundamental miscarriage of justice because Jamie Lynn Burris committed the robbery. (Doc. 1 at 12.) Mr. Morton contends because the eyewitness testimony and surveillance video indicated only one robber, Mr. Burris's previous guilty plea and sentence for the robbery should have precluded Mr. Morton's conviction on the same charges. (*Id.*, relying on Doc. 1 at 39-44.)

The record does not support Mr. Morton's arguments. Mr. Burris pleaded guilty to common law robbery and conspiracy to commit armed robbery, (Doc. 1 at 40), which is not inconsistent with Mr. Morton's guilt. Rather, it supports the conclusion that Mr. Burris and Mr. Morton were engaged in a conspiracy to rob the drug store in question.

---

[1] *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Other courts have explicitly held that such claims may not be brought in a habeas proceeding. *See, e.g.*, *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009) (per curiam).

[2] Mr. Morton did not raise an actual innocence claim until his second MAR, (*see* Doc. 10-9 at 3), and the state court judge found it was procedurally defaulted. (Doc. 1 at 34.) Mr. Morton has not offered any explanation for why he did not raise this argument in his first MAR.

Moreover, the evidence against Mr. Morton was quite strong. At trial, the lead detective testified that a confidential informant told officers that Mr. Morton, Mr. Burris, and Mr. Morton's girlfriend, Stephanie Young, were involved. (Doc. 10-13 at 24-25.) The owner of the drug store testified that she was "a hundred percent sure" Mr. Morton was the robber, because she had seen him previously as a customer of the pharmacy. (Doc. 10-12 at 106.) Another witness testified he saw a unique car, later identified as belonging to Ms. Young, drive by the pharmacy twice on the evening of the robbery. (Doc. 10-12 at 176; Doc. 10-13 at 25, 32.) The detective testified that Ms. Young provided information to the detective that led to two search warrants, one for Mr. Burris's residence and one for the residence Mr. Morton and Ms. Young shared. (Doc. 10-13 at 26-28.) When detectives searched Mr. Morton's residence, they found a small silver revolver on the living room coffee table very near Mr. Morton, and an eyewitness recognized the firearm from the robbery. (*Id.* at 30, 116.) Evidence about the height of the robber was inconsistent with Mr. Burris's height. (*Id.* at 19-20, 109.) The jury heard evidence that Mr. Morton identified Mr. Burris as the person who went into the store wearing the gray hoodie, and it rejected that evidence. (*Id.* at 75.)

Mr. Burris' guilty plea is not inconsistent with Mr. Morton's guilty plea, and the evidence against Mr. Morton was strong. Mr. Morton has not shown actual innocence.

### 2. Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of counsel, a habeas petitioner must demonstrate (1) that counsel's performance was deficient, which requires "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

4

Sixth Amendment," and (2) that "the deficient performance prejudiced the defense," meaning there was a reasonable probability of a different result but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689. For habeas petition claims of ineffective assistance of counsel, "AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376 (citations and quotations omitted).

Mr. Morton contends that he received ineffective assistance of trial counsel because his attorney did not present any evidence that Mr. Burris committed the robbery, failed to file a motion to suppress identification testimony by the victim, failed to present expert testimony about the fallibility of identification evidence, failed to interview any witnesses, and various other alleged errors. (Doc. 1 at 13-14.) Mr. Morton raised these claims in his first MAR, (Doc. 10-6 at 14-22), and they were denied by the state court because Mr. Morton was in a position to raise these issues in his previous direct appeal and did not do so. (Doc. 1 at 31-32.)

While some North Carolina courts have held that an MAR "is preferable to direct appeal" for ineffective assistance of counsel allegations, *State v. Stroud*, 147 N.C. App. 549, 554, 557 S.E.2d 544, 547 (2001) (citing *State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000)), in cases where the ineffective assistance of counsel claims can be decided based on the record alone, they may be appropriately resolved on direct appeal. *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001); *see also State v.*

5

*Blakeney*, 352 N.C. 287, 308, 531 S.E.2d 799, 815 (2000). North Carolina law "requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." *Fair*, 354 N.C. at 166, 557 S.E.2d at 525 (citation and quotation marks omitted). Mr. Morton's conclusory allegations of ineffective assistance are insufficient to overcome the deference owed to the state court's decision that there was a procedural default in the ineffective assistance claims.

In any event, and even if the state court's decision that the ineffective assistance claims could have been raised on direct appeal was incorrect, the Court has reviewed Mr. Morton's ineffective assistance claim in light of the record and finds no basis for relief. The trial transcript reveals that Mr. Morton's lawyer presented a competent defense. Counsel filed a motion to dismiss on speedy trial grounds and presented evidence and case law in support of that motion. (Doc. 10-12 at 7-44.) When the trial court ruled against Mr. Morton, his lawyer made an additional attempt to clarify his argument "in an effort to preserve the record." (*Id.* at 45-46.) Counsel also filed a motion to suppress the fruits of a search warrant based on a misstatement of fact in the application. (Doc. 10-13 at 10-13.) He extensively cross-examined the primary victim to emphasize the limited nature of her contact with the robber, the circumstances inhibiting accurate identification, and her prior inconsistent statements. (Doc. 10-12 at 127-159.) During cross-examination, he obtained testimony from another victim that she could not identify the defendant as the robber, (*Id.* at 170-72), and an instruction from the Court to disregard her earlier identification. (Doc. 10-13 at 6-7, 14-15.) He regularly objected at appropriate times. (*E.g.*, Doc. 10-12 at 102, 117-18, & 177; Doc. 10-13 at 19, 21, & 24.)

6

He cross-examined the lead detective about Mr. Burris's potential role and other circumstances undermining the evidence of Mr. Morton's guilt, (Doc. 10-13 at 82-108), including emphasizing Mr. Morton's statement that Mr. Burris was the one who went into the pharmacy. (*Id.* at 99.) The record reflects that Mr. Morton's attorney provided competent representation well within the constitutional range, and Mr. Morton has not provided evidence to the contrary.

3. **Due Process**

Mr. Morton contends that the trial court violated his constitutional rights by granting the jury's request to have Mr. Morton approach the jury box to view his eyes during jury deliberations, after the close of all the evidence. (Doc. 1 at 15.) This claim is without merit. First, Mr. Morton consented to the jury's request that they get a closer look at his eyes. (Doc. 10-13 at 158-59.) Additionally, the claim is procedurally defaulted because he could have raised this claim on direct appeal and did not do so. (*See* Doc. 10-3.) Finally, though Mr. Morton cites a number of cases in his brief, (Doc. 17 at 21-22), none support his argument that approaching the jury box to allow jurors to view his eyes violated his right to due process.[3] To the extent he contends that the

---

[3] In *United States v. Santana*, 175 F.3d 57, 63-65 (1st Cir. 1999), the court held that allowing the jury to view the defendant's ears after the close of all evidence, when his ears had been hidden from view for the duration of trial by interpreter headphones, amounted to allowing the jury to consider extrinsic information, and, as such, was error per se. However, other courts to consider similar arguments have come to different conclusions. *E.g.*, *Washington v. United States*, 881 A.2d 575, 582 (D.C. 2005) (allowing the jury to examine the defendant's facial profile up close and at multiple angles did not constitute "new evidence." "A contrary holding might well disadvantage those jurors with poor vision, especially where the sole issue at trial is the identification of the assailant."). The other cases Mr. Morton cites deal with submission to the jury of evidence or documents that were never entered into evidence and do not support his argument. (*See* Doc. 17 at 21, citing *United States v. Hans*, 738 F.2d 88 (3d Cir. 1984); *Virgin*

7

procedural bar should be excused because he is actually innocent, that claim is without merit for the reasons stated *supra*.

   4.   ***Brady* Error**

Mr. Morton contends that the prosecutor violated his constitutional rights by failing to disclose evidence favorable to him. (Doc. 1 at 16.) However, in his argument, he complains only that the trial court did not allow a law enforcement witness to testify about Mr. Burris's conviction for the same crime. (*See id.*) The admission or exclusion of evidence in a state criminal trial is not cognizable on federal habeas review, absent a specific constitutional violation or fundamental unfairness, neither of which occurred here. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

This claim is also procedurally barred, as it could have been raised on direct appeal and was not. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993); (Doc. 10-3.) To the extent Mr. Morton asserts that the procedural bar should be excused because he is actually innocent, that argument is without merit for the reasons stated *supra*.

   5.   **Evidence Errors**

Mr. Morton contends that the trial court erred by overruling his objection to the admission of bond documents that were admitted for the purpose of connecting him to Ms. Young and to the scene of the crime. (Doc. 1 at 16-17.) He raised this claim on direct appeal, where it was denied by the North Carolina Court of Appeals. *Morton*, 2013 WL 6236922, at *3-4; (*see also* Doc. 1 at 24-26.) As noted *supra*, evidence errors are

---

*Islands v. Joseph*, 685 F.2d 857 (3d Cir. 1982); *Dallago v. United States*, 427 F.2d 546 (D.C. Cir. 1969); and *United States v. Vasquez*, 597 F.2d 192 (9th Cir. 1979).)

not cognizable on habeas review, and, in any event, the Court of Appeals' decision was not contrary to clearly established law.

### 6. Speedy Trial

Mr. Morton contends that he was denied his right to a speedy trial. (Doc. 1 at 17-18.) Mr. Morton raised this claim on direct appeal, where it was rejected by the North Carolina Court of Appeals. *Morton*, 2013 WL 6236922, at *4; (*see also* Doc. 1 at 26-28.) Mr. Morton has not shown that this decision was contrary to clearly established law, that it involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts. *See* § 2254(d). The state court decision is entitled to deference, and Mr. Morton has not established grounds for relief.

## CONCLUSION

Mr. Morton has not shown that any of the relevant state court decisions were contrary to or an unreasonable application of clearly established federal law, nor has he shown that these decisions were based on an unreasonable determination of the facts in light of the evidence. *See* § 2254(d). Accordingly, his habeas petition is denied.

**IT IS THEREFORE ORDERED** that the respondent's motion for summary judgment, (Doc. 8), is **GRANTED**. Upon consideration, it is further **ORDERED** that the petitioner's motions to appoint counsel, (Docs. 13, 19), are **DENIED** in the Court's discretion and his motions to exceed page limit, (Docs. 15, 20), are **GRANTED**.

This the 1st day of October, 2015.

UNITED STATES DISTRICT JUDGE